**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnny B. WILLIAMS,**
**Defendant–Appellant.**

**No. 90–6085.**

United States Court of Appeals,
Tenth Circuit.

Dec. 19, 1990.

Frank Michael Ringer, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

William P. Earley, Asst. Public Defender, Oklahoma City, Okl., for defendant-appellant.

Before SEYMOUR, BALDOCK and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Following a guilty plea on two separate counts of bank robbery in violation of 18 U.S.C. § 2113(a), Appellant Johnny B.

Williams (hereinafter "Defendant") was sentenced to 180 months imprisonment on each count, to be served concurrently. The single issue in this appeal is whether the district court could depart upward from the sentence recommended by the United States Sentencing Commission Guidelines (the "Guidelines") because the recommended sentence did not adequately reflect the seriousness of Defendant's past criminal conduct. We affirm.

Defendant's guilty plea on the two bank robbery counts was entered pursuant to a plea agreement. The Presentence Report reveals the recommended prison sentence, as determined by the Guidelines.[1] The base offense level resulting from two counts of robbery is 18.[2] One point is added when the robbery is of a financial institution. See United States Sentencing Commission, *Guidelines Manual*, §§ 2B3.-1(a), 2B3.1(b)(1)(B) (Oct.1988) (hereinafter U.S.S.G.). No other points were added here, resulting in a total offense level for the Defendant of 19.

According to the Presentence Report, Defendant's criminal history included four separate and distinct bank robberies, all dating back to 1981. In one of the four bank robberies he drove the getaway car. The charges stemming from these crimes included four counts of bank robbery and one count of aiding and abetting. Defendant was convicted and sentenced to fifteen years imprisonment on each of these five counts to run concurrently. He was paroled in 1989. The two convictions of bank robbery now before us are for robberies committed during the first year of Defendant's parole.

1. The recommended sentence is found by referring to a sentencing table in the Guidelines. The two components of this table are the offense levels and the criminal history categories. The offense level is located first by assigning points based on the instant offense, as adjusted by a variety of factors such as whether a gun was used in the commission of the offense. After the offense level is set, the criminal history score is calculated by assigning points as dictated by various events in the criminal record. When all points are assigned, the sentencing judge refers to the sentencing table in the Guidelines. The table is a grid where the offense level and criminal history points come together to reveal a suggested imprisonment range and the judge may sentence from anywhere within the suggested range. Under certain circumstances, the judge may depart and sentence outside the range. See United States v. Roberson, 872 F.2d 597, 600–01 (5th Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

2. The base offense level for bank robbery has since been raised to 20. All references in this opinion are to the Guidelines as they applied at the time the Defendant committed the bank robberies in September, 1989.

Defendant received a total of six criminal history points for these five prior convictions. Only three points were given for his prior convictions because the Guidelines specify that "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." U.S.S.G. § 4A1.2(a)(2). The other three points were derived from Defendant's having committed the instant bank robberies less than two years following his release from prison and while on parole.[3] U.S.S.G. §§ 4A1.1(d)–(e). The six criminal history points placed Defendant in criminal history category III of the Guidelines.

Based on Defendant's offense level of 19 and criminal history category of III, the Guidelines suggested a sentence from 37–46 months. But the probation officer, in his presentence report, suggested an upward departure from the Guidelines would be appropriate because "the criminal history category of this defendant does not appear to adequately reflect the seriousness of his past criminal conduct nor the likelihood that he will commit other crimes." The district court agreed, deciding that incarceration for only 37–46 months was disproportionately low in light of the Defendant's extensive criminal background. Announcing his decision to depart upward, the district judge found the criminal history Guidelines range was insufficient "to adequately reflect the seriousness of Mr. Williams' prior criminal record and the likelihood that he will repeat similar behavior." The judge further observed:

> The defendant has three [sic][4] prior instances of robbery of financial institutions. These were separate and distinct acts, but the cases arising from those acts were consolidated for sentencing purposes. Had Mr. Williams been convicted for each offense on three separate occasions, he would be a career criminal

as defined at part 4B1.1 of the guidelines.

> I thus find that this defendant's criminal history category of III, that's Roman Numeral III, is inadequate, and upward departure is warranted pursuant to the guideline part 4A1.3 policy statement.

> Furthermore, the repeated acts of robbery of financial institutions by the defendant is, in the opinion of the Court, circumstances of a kind not adequately considered by the Sentencing Commission in formulating the guidelines for this offense.

Following these comments, the court imposed a sentence under the career offender provisions of the Guidelines. *See* U.S.S.G. § 4B1.1.

A defendant is a career offender if he meets three requirements as set forth in the Guidelines. These requirements are: (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.[5] The base offense level for a career offender is increased to the maximum offense level allowed by the statute setting forth the elements of the crime. In addition, the criminal history category is raised to the highest level of the Guidelines, which is category VI. *See Id.* For example, the maximum sentence allowed by the federal bank robbery statute is 240 months. Under the career offender provisions of the Guidelines the base offense level for a career offender bank robber is 32, and the criminal history category is VI. Pursuant to the Guidelines, the sentence range is 210–262 months, and this is within

---

3. In the present case, Defendant was charged with only two counts of bank robbery pursuant to a plea agreement with the United States Attorney. Defendant, however, actually committed eight robberies between August 29, 1989 and October 6, 1989.

4. We note there existed four separate instances of bank robbery, which resulted in five prior felonies including four bank robbery convictions and one aiding and abetting conviction.

5. The Guidelines definition of violent crime includes robbery. U.S.S.G. § 4B1.2(1), comment. (n. 1).

the maximum 240–month sentence allowed by the bank robbery statute. *See* 18 U.S.C. 2113(a); U.S.S.G. § 4B1.1.

The sentence, however, in this case was only 180 months, which is below the 210–262 month range in the Guidelines. In imposing its sentence, the district court recognized it was dipping below the career offender range. In so doing, the court acknowledged it was crediting the Defendant "for his cooperation—his pledge to cooperate and my belief that he will do so." The Guidelines allow a two-point reduction in the offense level when a defendant accepts responsibility for his crimes and cooperates with the authorities. U.S.S.G. § 3E1.1. Thus, the 180–month sentence this defendant received is consistent with a two point reduction from offense level 32, criminal history category VI. *See* U.S.S.G. Chapter 5, Part A—Sentencing Table, Offense Level 30, Criminal History Category VI, which yields a sentencing range of 168–210 months.

■ Defendant argues on appeal that the district court erred by departing upward. He asserts that "[t]he failure of the sentencing court to follow guideline procedures before departing upward from the applicable sentencing guideline range makes the sentence illegal." Defendant believes the jump from a criminal history category of III to VI, coupled with an increase in the base offense level from 19 to 32, is insupportable under the Guidelines and the record in this case. He complains that the district court did not reveal what method of reasoning would be used in departing upward until it made findings and imposed sentence.

Our review of district court decisions to depart upward is governed by statute, 18 U.S.C. § 3742(e), as articulated by the standard adopted in *United States v. White*, 893 F.2d 276 (10th Cir.1990), and in which the parties in this case agree controls our disposition. According to our standard:

First, we determine de novo whether the district court has articulated circumstances which warrant departure and which were not adequately considered by the Sentencing Commission in formulat-

ing the guidelines, or if considered by the Commission, that a departure was invited by the guidelines. Second, we determine whether the factual findings underlying the sentencing court's decision were clearly erroneous. Finally, 18 U.S.C. § 3742(e)(3) requires us to determine whether the degree of departure was "reasonable."

*United States v. Gardner*, 905 F.2d 1432, 1434 (10th Cir.) (citing *White*, 893 F.2d at 278), *cert. denied*, — U.S. —, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). *See, e.g., United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (setting forth the standard adopted in *White*).

■ Beginning with the first step of *White*, the district court may depart if it determines "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). While the Guidelines specify sentences for the typical "heartland" crime, there are cases that are sufficiently unusual so as to warrant departure. *White*, 893 F.2d at 278. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* (citation omitted). In our review, we decide whether the district court properly relied on information placing this case in the "unusual" or "atypical" category not adequately considered by the Guidelines. The district court must make adequate findings explicitly setting forth the reasons behind its decision to depart so we have a sufficient record to review. 18 U.S.C. § 3553(c)(2); Fed.R.Crim.P. 32(c). *See United States v. Freitekh*, 912 F.2d 421, 423 (10th Cir.1990); *United States v. Emrick*, 895 F.2d 1297 (10th Cir.1990).

The district court sufficiently explained the circumstances warranting departure here by discussing on the record the Defendant's "repeated acts of robbery." Be-

cause the court made such findings we are able to review its decision, and in so doing conclude that these repeated acts of bank robbery constitute similar criminal conduct not adequately considered by the Guidelines. *Gardner*, 905 F.2d at 1435. Where previous crimes were consolidated for trial or sentencing, the Guidelines caution against blindly relying on the artificially low criminal history score that consolidation brings. The district court, instead, must look beyond the underrepresentative criminal history score and consider "the seriousness of the defendant's criminal history and the danger that he presents to the public." U.S.S.G. § 4A1.2, comment. (n. 3). As the Guidelines provide:

> [I]f the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect either the seriousness of the defendant's criminal history or the frequency with which he commits crimes. In such circumstances, the court should consider whether departure is warranted.

*Id.* Based on the foregoing, the first step of *White* is satisfied. The district court in this case considered the Defendant's five prior felony convictions—stemming from four separate and distinct bank robberies—as only three prior instances of bank robbery. If the district court erred, it was in the Defendant's favor and of no consequence to him. *See supra* note 4.

Next, utilizing the clearly erroneous standard, we find there is a sufficient factual basis to justify departure under *White's* second step. There is no dispute as to the material facts revealing Defendant's propensity for robbing banks, i.e., the four separate and distinct instances of bank robbery. *See* 18 U.S.C. § 3742(e).

 Finally, having determined a departure is warranted, we go on to step three of *White* and decide if the degree of departure is reasonable. We will vacate a sentence if we independently decide it is unreasonable. *Gardner*, 905 F.2d at 1435;

*White*, 893 F.2d at 278. In our assessment, we consider all of the factors the district court looks to under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3742(e). Recently, we stressed that these factors encompass concepts of "uniformity and proportionality." *Gardner*, 905 F.2d at 1436. In *White*, we also pointed out that the factors include: "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, [and] the policy statements contained in the Guidelines...." *Id.* at 278. *See, e.g., United States v. Keys*, 899 F.2d 983, 990 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990). "[T]here is no single formula or rationale that should be used in all instances by the district courts to determine the degree of departure from the guidelines." *Gardner*, 905 F.2d at 1438. In fact, in passing the Guidelines as part of its sentencing reform plan, Congress envisioned that sentencing judges would still have discretion. *White*, 893 F.2d at 278–79 (citing S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235). "With these factors in mind, we should not lightly overturn determinations of the appropriate degree of departure." *United States v. Arminta Mohundro Russell*, 905 F.2d 1450, 1455 (10th Cir.) (citing *White*), *cert. denied,* — U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990).

Before going to jail in 1981, the Defendant repeatedly engaged in bank robbery. Within a year of his release in 1989 he was again robbing banks. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a)(1), the district court determined the applicable Guidelines sentencing range was inadequate based upon Defendant's prior criminal history and departed upward to the career offender range "to protect the public from further crimes of the defendant, to deter others from similar criminal conduct, to reflect the seriousness of the offense, and to promote respect for the law." Based on these articulated reasons, we cannot say that the district court's departure upward from the Guidelines was unreasonable.

■ We recognize that the prior felony convictions used to qualify a person as a career offender must be felony convictions that are ordinarily counted separately by the Guidelines. U.S.S.G. § 4B1.2(3)(B). In this case the prior felony convictions were not counted separately because the convictions were combined for sentencing. The Guidelines say "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." U.S.S.G. § 4A1.2(a)(2). However, the Guidelines commentary specifically cautions against applying § 4A1.2(a)(2) in an overly broad fashion so that the criminal history score underrepresents the seriousness of the defendant's criminal history and the danger the defendant presents to the public. U.S.S.G. § 4A1.2, comment. (n. 3). With this caution in mind, a sentencing judge may separate prior related convictions that resulted in a single sentence. The judge may then count the convictions as prior felony convictions for purposes of the Guidelines career offender calculation. *See United States v. Dorsey*, 888 F.2d 79 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990) (efficient judicial administration procedure provided by consolidating cases for sentencing should not be sacrificed by a literal interpretation of the career offender provision).

After reviewing the transcript of the sentencing hearing, it is apparent that the district court examined the Guidelines and found that without departing, the sentence range would be only 37–46 months. The court then continued its consultation of the Guidelines and found departure is recommended when the criminal history score "underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public." U.S.S.G. § 4A1.2, comment. (n. 3). Still following the Guidelines, the court considered whether departure was warranted, and found that it was. *Id.*

The court then departed upward and imposed sentence by using "the guideline range for a defendant with a higher ...

criminal history category, as applicable." U.S.S.G. § 4A1.3, p.s. In this case, the applicable criminal history category was so high that the Defendant qualified as a career offender. Defendant achieved this by (1) being over eighteen at the time of the instant offense; (2) by committing a crime of violence; and (3) by having at least two prior felony convictions for violent crimes. U.S.S.G. § 4B1.1. When the district court counted some of the Defendant's prior bank robberies as separate offenses, which they were, the Defendant received the career offender status he was due.[6] Finally, the district court dropped the Defendant's offense level two points because he cooperated with the authorities by admitting he robbed eight banks in 1989. U.S.S.G. § 3E1.1. It was at this point the district court concluded that the Defendant should be sentenced to 180 months.

Our review of a district court decision to depart from the Guidelines would be easier if the sentencing judge would set forth the factual findings and explain the basis for the departure in more detail than was done here. Nevertheless, because we are able to determine the district court's decision process in this case, we do not agree with the Defendant's argument that the departure here traduced the Guidelines or the policies behind them. On the contrary, the district court adhered to the Guidelines when it found that the Defendant is a career offender and sentenced accordingly. In addition, we believe Defendant's complaints that the record is inadequate and that the district court did not reveal its method of reasoning in departing upward are nothing more than corollaries to the Defendant's principal assertion that his sentence traduces the Guidelines and is illegal. We therefore reject these arguments for the same reasons we reject Defendant's primary assertion. We also believe the Defendant's reliance on our decision in *United States v. Hawkins*, 901 F.2d 863 (10th Cir.1990), to support his position is misplaced. In *Hawkins*, we reversed and remanded for resen-

6. As previously stated, the district court referred to only three of the four prior bank robberies committed by the Defendant. These separate

crimes led to the Defendant's conviction on four counts of bank robbery and one count of aiding and abetting.

tencing because the district court sentenced an individual as a career offender even though he "did not actually qualify as a career offender because one of his two prior felony convictions did not meet the definition contained in § 4B1.1(2)." *Id.* at 866 (footnote omitted). *Hawkins* is inapposite to this case because, as already pointed out, the Defendant here easily meets the Guidelines' definition for a career offender.

Despite Defendant's claim, the district court did not traduce the Guidelines or their policies. We find no provision in the Guidelines preventing a court from departing upward to the career offender section of the Guidelines. Moreover, the Guidelines anticipate cases where departure to the statutory maximum for a career offender is proper:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

U.S.S.G. § 4A1.3, p.s. *See also Russell,* 905 F.2d at 1455 (where a defendant's consolidated sentence involves sixteen separate counts, it is proper for sentencing court to rely on this as a factor in its decision to depart); *United States v. James Ray Russell,* 905 F.2d 1439, 1444 (10th Cir.1990) (district court may depart upward when defendant's strong propensity to commit crime is not revealed by criminal history due to defendant's incarceration). *But see United States v. Fortenbury,* 917 F.2d 477, 480 (10th Cir.1990) (remand for resentencing necessary where upward departure in offense level is not based on defendant's career offender status as determined by the Guidelines).

In conclusion, we have applied the test enunciated in *White.* The circumstances articulated by the trial court, i.e., the prior bank robberies, constituted similar criminal conduct not adequately considered by the Guidelines. The factual findings underlying the decision to depart upward were not clearly erroneous. The degree of departure was reasonable under *White.*

The sentence of the district court is AFFIRMED.